UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ALLISON F. GORHAM,

                          Plaintiff,

  -against-                                    7:06-CV-764
                                                       (LEK/DRH)
MICHAEL J. ASTRUE,[1] Commissioner of Social
Security Administration,

                          Defendant.
_____

## DECISION AND ORDER

**I.    BACKGROUND**

    **A.    Procedural History**

Plaintiff Allison F. Gorham ("Plaintiff") filed an application for Disability Insurance Benefits ("DIB") on April 20, 2004. Administrative Transcript ("AT") 53-55. The application was denied initially. AT 33. A request was made for a hearing. AT 39. A hearing was held before an Administrative Law Judge on November 8, 2005. AT 175-205. In a decision dated December 27, 2005, the ALJ found that Plaintiff is not disabled. AT 13-22. The Appeals Council denied Plaintiff's request for review on May 30, 2006. AT 4-7. Plaintiff commenced this action on June 20, 2006 pursuant to 42 U.S.C. § 405(g), seeking review of the Commissioner's final decision. Dkt. No. 1.

    **B.    Contentions**

Plaintiff makes the following claims:

(1) The Commissioner erroneously failed to find that Plaintiff's neck impairment meets Listing 1.04A. Dkt. No. 7 at 11-14.

---

[1] Michael J. Astrue became Commissioner of Social Security on February 12, 2007. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Michael J. Astrue is substituted as the Defendant in this suit.

(2) The Commissioner failed to lend proper weight to the opinion of Plaintiff's treating physician.  Dkt. No. 7 at 14-19.

(3) The Commissioner failed to properly calculate Plaintiff's residual functional capacity ("RFC").  Dkt. No. 7 at 19-21.

(4) There is no substantial evidence to support the Commissioner's conclusion that there is significant work in the national economy that Plaintiff could perform.  Dkt. No. 7 at 21-23.

(5) The Commissioner failed to properly assess Plaintiff's subjective allegations of pain and disabling symptoms.  Dkt. No. 7 at 23-24.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.  Dkt. No. 9.

**C.     Facts**

Plaintiff was forty-four years old at the time of the hearing.  AT 179.  Plaintiff has a bachelors degree in communications, as well as a degree from the Culinary Institute of America.  AT 75, 179.  Plaintiff's past work experience includes working as a cake decorator, fund-raising director, landscaper, restaurant manager/chef, and substitute teacher.  AT 71.  Plaintiff alleges that she became unable to work on January 1, 2002.  Id.  Plaintiff alleges disability due to back problems and herniated cervical discs.  AT 70.

**1.     D. Peter Van Eenenaam, M.D.**

From January of 2002 to June 5, 2002, Plaintiff received treatment for her right shoulder and later her cervical spine from D. Peter Van Eenenaam, M.D., an orthopedist.  AT 100-13.  Plaintiff had injured her shoulder and neck while cross-country skiing.  AT 108, 111.  X-rays of Plaintiff's right shoulder showed "some degenerative changes of her neck with some foraminal encrouchment, [and] some auto fusion."  AT 101.  An MRI of Plaintiff's cervical spine showed "significant spinal

cord compression, especially at [C]5-6." Id.  Dr. Van Eenenaam diagnosed Plaintiff as suffering from a cervical sprain, bursitis, tendonitis, and right shoulder impingement.  AT 104.  She was educated in a home exercise program and advised to consult with a surgeon.  AT 100-01, 108.

### 2. Hansen Yuan, M.D.

From September 9, 2002 to October 25, 2005, Plaintiff treated with Hansen Yuan, M.D., a Professor of Orthopedics and Neurological Surgery at Upstate Medical University.  AT 117-36, 153-60.  Dr. Yuan initially diagnosed Plaintiff as suffering from a two-level cervical disc degeneration and found that Plaintiff would be a good candidate for a certain surgical procedure, which had not been approved by the Food & Drug Administration at that time.  AT 53-54.

On November 17, 2003, Dr. Yuan prescribed Hydrocodone and "cervical therapy."  AT 119, 126.  He noted that Plaintiff should use Hydrocodone minimally, noting that he "would much rather do something to make sure the cord is safe, rather than taking a lot of pain med[ications] which would block the symptoms and then maybe [cause] potential harm."  AT 119.  He opined that Plaintiff "remains totally disabled."  AT 120.

On December 8, 2003, Dr. Yuan reiterated that Plaintiff is "totally disabled from going back to work as a cake decorator."  AT 118.  Dr. Yuan noted that it was important for Plaintiff to keep mobile and flexible.  Id.

On July 27, 2004, Dr. Yuan again opined that Plaintiff is totally disabled due to Plaintiff's "arm symptoms" and because "keeping her head down at any degree cause[s] her difficulty."  AT 153.

On November 16, 2004, Dr. Yuan noted that Plaintiff's condition "obviously" was deteriorating.  AT 154.  He noted that Plaintiff was unable to "know where her hands are, or feet are, [and she has] to look to see where they are."  Id.  He opined that Plaintiff remained totally

3

disabled. AT 155.

On October 25, 2005, Dr. Yuan found that a recent MRI showed three levels of degenerating discs, specifically at C4-5, C5-6, and C6-7. AT 156-57. He opined that Plaintiff remains totally disabled and should lift no more than twenty-five pounds, and perform no significant pulling, pushing, bending over, and "looking up." AT 157. He also stated that sitting and holding up the head for "long periods of time could be detrimental." Id. Dr. Yuan recommended holding off on pursuing surgical intervention. Id.

### 3. Kalyani Ganesh, M.D.

On June 1, 2004, Plaintiff was examined at the request of the agency by Kalyani Ganesh, M.D. AT 140-42. Dr. Ganesh diagnosed Plaintiff as suffering from a history of a herniated disc at C4-5 and C5-6. AT 142. Dr. Ganesh opined that Plaintiff has no gross limitation in regard to sitting, standing, walking, climbing, and bending. Id. However, she has a "mild to moderate" limitation with regard to lifting, carrying, pushing, and pulling. Id.

## II. DISCUSSION

### A. Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920 to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since the alleged onset date. AT 18. At the second step, the ALJ determined that Plaintiff's degenerative disc disease of the cervical spine with myelomalacia is a severe impairment. Id. At the third step, the ALJ concluded that this impairment fails to meet or medically equal one of the impairments listed in Appendix 1 of the regulations. AT 18-19. At the fourth step, the ALJ found that Plaintiff retains the RFC to perform sedentary work, which involves lifting and carrying up to ten pounds occasionally, and that allows her to sit and stand at her discretion, and that involves no more than occasional bending, stooping, crouching, climbing, kneeling, balancing, walking, pushing and pulling with her extremities, and no exposure to temperature extremes, humidity, or overhead

reaching.  AT 19.   The ALJ therefore found that Plaintiff is unable to perform her past relevant work.  AT 20.  At the fifth step, the ALJ consulted a vocational expert and concluded that Plaintiff is not disabled.  AT 21.

**B.** **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, *inter alia*, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  Johnson, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an

6

analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

### C.     Listing 1.04A

Plaintiff argues that the ALJ erred by failing to find that her condition met Listing 1.04A. Dkt. No. 7 at 11-14. Defendant argues that the ALJ properly found that Plaintiff's condition failed to meet or medically equal this listed impairment. Dkt. No. 9 at 7-10.

Pursuant to the third step of the five-step process, if the claimant has an "impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled." 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). In cases in which the disability claim is premised upon one or more listed impairments of appendix 1, "the Secretary should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment." Berry v. Schweiker, 675 F.2d 464, 469 (2d Cir. 1982); see also Hendricks v. Commissioner of Social Security, 452 F. Supp.2d 194, 198-99 (W.D.N.Y. 2006).

Listing 1.04A requires the following:

1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

7

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

In the decision, the ALJ found that Plaintiff's condition, while severe, failed to meet or medically equal Listing 1.04A. AT 19. The ALJ explained that while Plaintiff experiences neck pain and "some signs" of radiculopathy, "examinations by her treating physician and a consulting physician do not show significant neurological compromise." Id. The ALJ then noted that there "is no indication that the claimant's ability to ambulate effectively is seriously compromised, or that her ability to use her upper extremities for fine and gross movements is restricted to a significant degree." Id. The Court finds that this explanation is insufficient for the following reasons.

First, it is unclear what constitutes a "significant" neurological compromise, as the ALJ fails to explain this statement. In any event, Listing 1.04A requires no "significant" neurological compromise. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Instead, a claimant must simply show a disorder of the spine that results in, *inter alia*, a compromise of a nerve root or the spinal cord. See id.

Moreover, while the ALJ noted that *examinations* failed to show significant neurological compromise, the Court notes that the *results from the diagnostic testing* reflect the following:

> 1) An MRI performed on May 24, 2002 showed moderate-sized central disc herniation at C5-6 superimposed on a somewhat narrow canal. There was clear-cut deformity of the spinal cord, with abnormal signal changes in the gray matter of the cord at this level. AT 114.
>
> 2) An MRI performed on September 24, 2002 showed a small central disc protrusion at the C4-5 level with minimal spinal cord compression. A disc bulge at the C5-6 level with moderate spinal cord compression was also seen. There was mild narrowing of the C5 neural foramina secondary to uncinate process hypertrophy. There was a disc bulge at the C6-7 level, as well as small disc protrusions at the T1-2 through T3-4 levels. AT 134-35.
>
> 3) An MRI performed on October 6, 2003 showed at the C4-5 level, an annular bulge and small central disc protrusion with mild impingement on the spinal cord. At the C5-6 level, there was mild-to-moderate spinal canal stenosis with spinal cord compression secondary to an annular bulge and posterior vertebral body osteophyte

8

formation. There was narrowing of the neuroforamina bilaterally from the annular bulge and uncinate process spurs with a probable nerve root impingement. At the C6-7 level, there was an annular bulge with impingement on the thecal sac and borderline impingement on the spinal cord. There was borderline impingement on the spinal cord at the T1-2 level and mild impingement on the right ventral aspect of the spinal cord at T2-3. The conclusion was that there a region of myelomalacia involving the cervical spinal cord at the C5 and C6 levels. AT 131-32.

4) An MRI performed on November 17, 2003 showed myelomalacia at the C5 and C6 levels. There were regions of bony spinal canal stenosis at the C5-6 and C6-7 levels. AT 129-30.

5) An MRI performed on October 25, 2005 showed myelomalacia at the C4 and C5 levels. There was an increase in the size of the disc abnormalities at the C5-6, C6-7, and T1-2 levels. It was again noted that there was slight narrowing of the spinal canal secondary to an annular bulge and a small central disc protrusion with impingement on the ventral aspect of the spinal cord and subtle cord compression. At the C5-6 level, it was again noted that there was mild to moderate spinal canal stenosis secondary to an annular bulge, a new subtle central disc protrusion and posterior vertebral body osteophyte formation. There was narrowing of the neural foramina bilaterally from the annular bulge and uncinate process spurs with probable nerve root impingement. It was also noted that at the C6-7 level, there was an annular bulge and a new finding of a small central disc protrusion with mild compression of the right ventral aspect of the spinal cord. There was mild narrowing of the neural foramina bilaterally from uncinate process spurs. There was also a small to moderate central and left paracentral disc protrusion with impingement on the central aspect of the spinal cord at the T1-2 level. In the T2-3 level, there was a small to moderate right paracentral disc protrusion with impingement on the right ventral aspect of the spinal cord. AT 158-59. Dr. Yuan noted that Plaintiff's "stenosis [was of a] significant degree at the C5-6 levels." AT 157.

AT 114, 129-32, 134-35, 155-59.

Second, the ALJ stated that there is no indication that Plaintiff's ability to ambulate effectively is "seriously compromised, or that her ability to use her upper extremities for fine and gross movements is restricted to a significant degree." AT 19. It appears that the ALJ focused on whether Plaintiff established a loss of function. See 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00B2 ("functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason . . . or the inability to perform fine and gross movements effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal

9

impairment"). However, Listing 1.04A makes no mention of loss of function.

Third, the ALJ stated that no "physician or caregiver," including the "State Agency medical consultant" found that Plaintiff's conditions meets or equals a listed impairment. AT 19. However, it is the duty of the ALJ to determine whether a condition meets or equals a listed impairment. See 20 C.F.R. § 404.1520(a)(4)(iii). Moreover, the consultant to whom the ALJ refers is a disability analyst and not a physician or caregiver. See AT 33, 149.

Fourth, the ALJ failed to specifically discuss certain requirements of Listing 1.04A. For instance, the ALJ failed to discuss neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss accompanied by sensory or reflex loss. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

In light of the foregoing, the Court is unable to conclude that the ALJ provided a sufficient rationale in support of his finding that Plaintiff's condition failed to meet or medically equal Listing 1.04A. See Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir.1998) ("'Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles.'") (quoting Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)). Therefore, the matter must be remanded.

### D. Treating Physician

Plaintiff argues that the ALJ failed to lend proper weight to the opinion of Dr. Yuan. Dkt. No. 7 at 14-19. Defendant argues that the ALJ properly weighed Dr. Yuan's opinion. Dkt. No. 9 at 11-16.

The medical opinions of a treating physician are given "controlling weight" as long as they

are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). In Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004), the Second Circuit provided the following guidance:

> [T]he opinion of the treating physician is not afforded controlling weight where, as here, the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts. See Veino v. Barnhart, 312 F.3d 578, 588 (2d Cir. 2002) (treating physician's opinion is not controlling when contradicted "by other substantial evidence in the record"); 20 C.F.R. § 404.1527(d)(2). Here, the key medical opinions submitted by Dr. Elliott to the ALJ were not particularly informative and were not consistent with those of several other medical experts. Thus, Dr. Elliot's opinion as the treating physician does not sustain controlling weight.

Halloran, 362 F.3d at 32.

Even if the treating physician's opinion is contradicted by substantial evidence and thus is not controlling, it still may be entitled to significant weight "because 'the treating source is inherently more familiar with a claimant's medical condition than are other sources.'" Santiago v. Barnhart, 441 F. Supp. 2d 620, 627 (S.D.N.Y. 2006) (quoting Gonzalez v. Callahan, No. 94 Civ. 8747, 1997 WL 279870, at *11 (S.D.N.Y. May 23, 1997) (citing Schisler v. Bowen, 851 F.2d 43, 47 (2d Cir. 1988))). However, if not controlling, the proper weight given to a treating physician's opinion depends upon the following factors: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Omission of this analysis is considered failure to apply the proper legal standard, and is grounds for reversal of the Commissioner's determination. Schaal, 134 F.3d at 505.

The ALJ noted that Dr. Yuan opined on several occasions that Plaintiff is totally disabled. AT 20. The ALJ, however, afforded no controlling weight to these statements. Id. Under the Regulations, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled." 20 C.F.R. § 416.927(e)(1). Thus, the ALJ was not bound by such statements, as such statements relate to the ultimate issue that rests with the Commissioner. See 20 C.F.R. §§ 404.1527(e), 416.27(e); Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) ("That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability"). Accordingly, the ALJ properly weighed these statements.

However, regarding Dr. Yuan's opinion rendered on October 25, 2005 that Plaintiff has certain restrictions, first, it is unclear the amount of weight that the ALJ assigned to this opinion. Under the regulations, the ALJ must evaluate every medical opinion. 20 C.F.R. § 404.1527(d). With regard to a treating physician, the ALJ must then provide "good reasons" for the weight given to the source's opinion. 20 C.F.R. § 404.1527(d)(2). Here, the ALJ failed to state the weight assigned to this opinion and "accommodated" only some of the restrictions in the RFC finding.

Second, contrary to the ALJ's statement that he "accommodated the restrictions from . . . Dr. Yuan" in the RFC finding, AT 20, the ALJ failed to incorporate or even discuss some of the restrictions established by Dr. Yuan. For instance, the ALJ failed to incorporate Dr. Yuan's finding that holding up Plaintiff's head "for long periods of time could be detrimental." See AT 157. Additionally, the ALJ failed to address Dr. Yuan's finding that sitting "for long periods of time" could also be detrimental. See AT 157. This omission is striking considering that sedentary work generally involves up to *six hours* of sitting in an eight-hour workday. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted); see 20 C.F.R. § 404.1567(a).

Moreover, the ALJ failed to clarify what amount of time constitutes "long periods" in Dr. Yuan's opinion. The regulations specifically provide, "*We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved*, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(e)(1) (emphases added). Therefore, Dr. Yuan should have been contacted for clarification of his opinion.

The Court also notes that Dr. Yuan previously opined on July 27, 2004 that keeping down Plaintiff's head "at any degree cause[s] her difficulty." AT 153. The ALJ failed to provide for this limitation.

Thus, the ALJ failed to properly analyze Dr. Yuan's opinion that Plaintiff has certain limitations. The ALJ failed to, *inter alia*, state the weight assigned to Dr. Yuan's opinion, failed to incorporate or even discuss all of the limitations, and failed to contact Dr. Yuan for clarification of his opinion. Accordingly, the matter must be remanded.

### E.     Credibility

Plaintiff argues that the ALJ erred in determining her credibility. Dkt. No. 7 at 23-24. Defendant argues that the credibility determination is supported by substantial evidence. Dkt. No. 9 at 18-21.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

13

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. §§ 404.1529(a), 416.929(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. Id. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ stated that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. AT 19. The ALJ, however, found that Plaintiff's statements concerning the intensity, duration, and limiting effects of her symptoms are not entirely credible. Id. As discussed below, the ALJ failed to discuss fully the symptom-related factors.

First, the ALJ failed to provide an accurate description of Plaintiff's activities. The ALJ

stated that Plaintiff "is able to care for two rather young children [and] babysit for others a few times a week." AT 20.  However, Plaintiff stated that she has *one* child, who is eleven-years old and attends school, and that she babysits a friend's ten-month old baby for "a few hours a couple [of] times a week." AT 85, 179, 181.  The ALJ also noted that Plaintiff is able to perform various household chores, enjoy crafts, cook, drive, make beds, vacuum, sweep, shop, and care for her personal needs.  AT 20.  However, Plaintiff stated that she is unable to perform household chores, such as cooking, cleaning dishes, making the bed, vacuuming, as well as work on crafts, for more than one hour at a time due to her neck.  AT 184, 193.  She explained that after one hour, her neck will "ache and become worse and . . . cause the pain to shoot down [her] spine."  AT 194.  She also stated that she goes to the grocery store only once per week and that she does not vacuum on a daily basis.  AT 184, 194.  She further stated that while she is able to care for her personal needs, she has difficulty shaving in the shower.  AT 195.

Second, the ALJ failed to fully discuss the location, duration, frequency, and intensity of Plaintiff's symptoms.  For instance, the ALJ failed to discuss that Plaintiff testified to experiencing difficulty sleeping.  AT 186.  Plaintiff stated that she awakens nightly due to numbness in her hands.  Id.  Plaintiff also testified that she drops objects and at times is unable to pick up objects because of the numbness in her hands.  Id.  Similarly, Dr. Yuan noted on November 16, 2004 that Plaintiff's condition "obviously" deteriorated, since Plaintiff is unaware of "where her hands are, or feet are, [and has] to look to see where they are."  AT 154.

Third, regarding Plaintiff's medications, the ALJ noted that Plaintiff "uses Ibuprofen for pain relief, and . . . uses the medication Hydrocodone only as needed."  AT 20.  However, Plaintiff was advised by Dr. Yuan to "keep the [H]ydrocodone to a minimum."  AT 119.  Dr. Yuan explained that he "would much rather do something to make sure the cord is safe, rather than taking a lot of

15

pain med[ications] which would block the symptoms and then maybe [cause] potential harm." Id.

Fourth, the ALJ failed to discuss measures taken by Plaintiff to relieve symptoms. Plaintiff testified that she undergoes traction to relieve her neck pain. AT 188. She stated that on a "really, really bad day, [she has] to have that three times a day." Id.

In sum, the Court is unable to find that the credibility determination is supported by substantial evidence. The ALJ failed to fully discuss many of the factors set forth in the regulations. Accordingly, the matter must be remanded for a properly evaluation of Plaintiff's credibility.

**F.     RFC**

RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations which go beyond the symptoms. Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999); see 20 C.F.R. §§ 404.1545, 416.945. "RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." Smith v. Apfel, 69 F. Supp. 2d 370, 378 (N.D.N.Y. 1999) (citation omitted).

In assessing RFC, the ALJ must make findings specifying what functions the claimant is capable of performing, not simply making conclusory statements regarding a claimant's capabilities. Martone, 70 F. Supp. 2d at 150. Social Security Ruling ("SSR") 96-8p provides that the RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). SSR 96-8p, 1996 WL 374184, at *7 (SSA July 2, 1996). RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); see 20 C.F.R. §§ 404.1560, 416.960.

Plaintiff argues that the RFC determination is flawed because the ALJ improperly rejected Dr. Yuan's opinion. Dkt. No. 7 at 20-21. The Court already determined that the ALJ failed to analyze Dr. Yuan's opinion properly, as well as Plaintiff's credibility. Therefore, the Court is unable to conclude that the RFC determination is supported by substantial evidence. Accordingly, the matter must be remanded.[2]

### G.  Step Five Determination

Plaintiff argues that at Step Five, the ALJ relied on testimony from the vocational expert that fails to take into account all of Plaintiff's limitations. Dkt. No. 7 at 21-23. Defendant argues that the ALJ properly utilized the testimony of the vocational expert. Dkt. No. 9 at 21-23.

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing. See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). "[W]ork exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions in the country." 20 C.F.R. §§ 404.1566(a), 416.966(a). The ALJ may apply Medical-Vocational Guidelines ("the grids") or consult a vocational expert ("VE"). See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2. If a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate. Bapp v.

---

[2] Plaintiff also argues that the RFC determination is erroneous because Plaintiff's need to alternate sitting and standing precludes sedentary work. SSR 96-9p provides that in situations where an individual needs to alternate the required sitting of sedentary work by standing, "[i]t may be especially useful in these situations to consult a vocational resource in order to determine whether the individual is able to make an adjustment to other work." SSR 96-9p, 1996 WL 374185, at *7 (SSA July 2, 1996). Here, the ALJ consulted a vocational expert to whom he posed a hypothetical question which included an ability to alternate sitting and standing. See AT 199-200.

Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986).

Because the Court is remanding for a proper evaluation of the treating physician's opinion, Plaintiff's credibility, and RFC, the Court directs remand on this issue as well. Upon remand, the ALJ shall obtain the opinion of a vocational expert if Plaintiff's nonexertional limitations present significant limitations. See Bapp, 802 F.2d at 605-06 (holding that if a claimant's nonexertional impairments "significantly limit the range of work permitted by his exertional limitations" the application of the grids is inappropriate).

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED**, that the decision denying disability benefits be **REVERSED** and this matter be **REMANDED** to the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g)[3] for further proceedings consistent with the above; and it is further

**ORDERED**, that pursuant to General Order # 32, the parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been **RESCINDED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED.**

DATED:   August 25, 2008
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge

---

[3] Sentence four reads "[t]he court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).